IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

CHARLENE L.,[1]
      Plaintiff,

          v.                        Civil No. 3:19cv626 (REP)

ANDREW M. SAUL,
Commissioner of Social Security,
      Defendant.

## REPORT AND RECOMMENDATION

This is an action seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits and supplemental security income under the Social Security Act. Charlene L. ("Plaintiff"), forty-six years old at the time of her application, previously worked as a trust analyst at SunTrust Bank. (R. at 41, 238.) Plaintiff alleges that she resigned from her job at SunTrust because she was experiencing constant pain that prevented her from concentrating at work. (R. at 42-44.) Plaintiff suffers from degenerative disc disease, fibromyalgia, migraines, obesity, and affective and anxiety disorders. (R. at 18.) Plaintiff's pain improved notably after she underwent gastric bypass surgery in 2015 and found proper medication for her impairments. (R. at 36, 44, 48.) She is now back to work on a limited basis. (R. at 36.)

Plaintiff filed for disability benefits, alleging a closed disability period from December 9, 2014 to September 30, 2016, and seeking benefits for only the time period between her resignation from SunTrust and September 30, 2016. (R. at 35, 238, 245.) The Social Security Administration

---

[1]     The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

denied Plaintiff's claims, and an Administrative Law Judge ("ALJ") affirmed the denial of her claims. Review of the ALJ's decision now comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on the parties' cross motions for summary judgment, rendering the matter ripe for review.

Plaintiff specifically identifies two issues for the Court to consider on appeal: (1) that "[t]he ALJ failed to consider all of the Plaintiff's impairments in evaluating [her] residual functional capacity," specifically Plaintiff's fibromyalgia; and (2) that "[t]he ALJ did not conduct a function-by-function analysis in assessing Plaintiff's residual functional capacity." (Pl.'s Mot. For Summ. J. 5, ECF No. 12 ("Pl.'s Mem.").) Defendant responds by arguing that: (1) substantial evidence supports the ALJ's residual functional capacity assessment; and (2) substantial evidence supports the ALJ's evaluation of Plaintiff's subjective complaints. (Def.'s Mot. Summ. J. & Br. in Supp. Thereof 17-30, ECF No. 13 ("Def.'s Mem.").)

Plaintiff's brief also contends that the ALJ "failed to properly consider the amended period of disability[.]" (Pl.'s Mem. at 1, 8.) Because Plaintiff did not fully develop that argument, on December 10, 2020, the Court ordered Plaintiff to file a supplemental brief to explain why the ALJ's consideration of evidence outside the closed period of disability warrants remand and ordered Defendant to respond to Plaintiff's argument. (ECF No. 15.) In her supplemental brief, Plaintiff argued that the ALJ improperly relied on evidence outside the closed period of disability that should not have been considered. (Pl.'s Supp. Br. 2, ECF No. 19 ("Pl.'s Supp. Br.").) In response, Defendant argued that the ALJ did not err because the records outside the closed period of disability were probative of, and consistent with, the record from within the closed period, and the ALJ did not need to explicitly address the closed period of disability. (Def.'s Supp. Br. 5-7, ECF No. 20 ("Def.'s Supp. Br.").)

2

For the reasons set forth below, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 12) be GRANTED, that Defendant's Motion for Summary Judgment (ECF No. 13) be DENIED, and that the final decision of the Commissioner be VACATED and REMANDED.

## I.  PROCEDURAL HISTORY

Plaintiff filed for disability insurance benefits on March 31, 2015, and for supplemental security income on January 19, 2016, alleging an onset date of December 9, 2014. (R. at 15.) The Social Security Administration denied Plaintiff's claims initially on March 14, 2016, and again upon reconsideration on September 22, 2016. (R. at 15.) A hearing was held on February 27, 2018, during which Plaintiff, through counsel, amended her applications to allege a closed disability period from December 9, 2014 to September 16, 2016. (R. at 35.) On July 24, 2018, the ALJ issued a written opinion, denying Plaintiff's claims. (R. at 15-25.) The ALJ concluded that Plaintiff did not qualify as disabled under the Social Security Act because Plaintiff could perform work existing in significant numbers in the national economy. (R. at 24-25.) On July 9, 2019, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as the final decision of the Commissioner, subject to review by this Court. (R. at 1-3.)

## II.  STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court "will affirm the Social Security Administration's disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence, and includes the kind of relevant evidence that a reasonable mind could accept as

adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x. 264, 266 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)).

To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (alteration in original) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). In considering the decision of the Commissioner based on the record as a whole, the court must take into account "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 476. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

Social Security Administration regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the

regulations' severity and duration requirements. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's residual functional capacity, accounting for the most the claimant can do despite her physical and mental limitations. §§ 404.1545(a), 416.945(a). At step four, the ALJ assesses whether the claimant can perform her past work given her residual functional capacity. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## III. THE ALJ'S DECISION

On February 27, 2018, the ALJ held a hearing during which Plaintiff, represented by counsel, and a vocational expert testified. (R. at 33-64.) On July 24, 2018, the ALJ issued a written opinion, denying Plaintiff's claims and concluding that Plaintiff did not qualify as disabled. (R. at 15-25.) The ALJ followed the five-step evaluation process established by the Social Security Act in analyzing Plaintiff's disability claim. (R. at 15-25.)

At step one, the ALJ determined that Plaintiff engaged in substantial gainful activity after the alleged onset date. (R. at 17-18.) The ALJ noted that Plaintiff received income that represents substantial gainful activity in the fourth quarter of 2016, and all of 2017. (R. at 17.) Moreover, the ALJ noted that Plaintiff currently works part-time doing data entry for CarMax for four hours per day. (R. at 17.) Even though the ALJ determined Plaintiff engaged in substantial gainful activity, the ALJ did not consider whether Plaintiff's substantial gainful activity was disqualifying because other reasons justified denial of plaintiff's application. (R. at 17-18.)

5

At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: degenerative disc disease, fibromyalgia, migraines, obesity, and affective and anxiety disorders. (R. at 18.) At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 18.)

After step three, the ALJ considered Plaintiff's residual functional capacity. (R. at 20-23.) In determining Plaintiff's residual functional capacity, the ALJ considered Plaintiff's medical records from Plaintiff's alleged onset date through the date of the ALJ's decision, including records from after Plaintiff had already returned to work. (*See* R. at 20-22.) The ALJ found that Plaintiff had the residual functional capacity to perform light work with certain exertional and non-exertional limitations. (R. at 20.) At step four, the ALJ found that Plaintiff could not perform any past relevant work. (R. at 23-24.) At step five, the ALJ determined that Plaintiff could perform jobs existing in significant numbers in the national economy, including the representative occupations of garment sorter, paper patter folder, and fruit cutter. (R. at 24-25.) Accordingly, the ALJ concluded that Plaintiff did not qualify as disabled under the Social Security Act, from the alleged onset date through the date of his decision. (R. at 25.)

## IV. ANALYSIS

Plaintiff's appeal to this Court alleges that the ALJ erred in determining Plaintiff's residual functional capacity by: (1) failing to properly consider all of Plaintiff's impairments, specifically, Plaintiff's fibromyalgia and obesity; (2) considering Plaintiff's impairments as of the date of the decision, rather than during the closed period of disability; and (3) by not conducting a function-by-function analysis. (Pl.'s Mem. at 1, 5-8.) For the reasons set forth below, the Court finds that remand is warranted because the ALJ failed to consider all of Plaintiff's impairments, and there is

confusion in the record about how the ALJ evaluated the record evidence outside of the closed period of disability. Because remand is warranted on these grounds, the Court finds it unnecessary to consider Plaintiff's remaining argument, as the ALJ will conduct a new function-by-function analysis on remand.

## A. The ALJ Erred by Failing to Properly Consider Plaintiff's Fibromyalgia, but Did Not Err in Considering Plaintiff's Obesity.

Plaintiff argues that the ALJ erred by failing to properly consider Plaintiff's fibromyalgia. (Pl.'s Mem. at 5-6.) Plaintiff also contends that the ALJ did not address the effect of Plaintiff's obesity on her subjective complaints of pain. (Pl.'s Mem. at 7.) The Court addresses each of Plaintiff's arguments, in turn, below.

### 1. The ALJ Erred by Failing to Properly Consider Plaintiff's Fibromyalgia.

Plaintiff contends that the ALJ failed to properly consider Plaintiff's fibromyalgia diagnosis because the ALJ relied on medical evidence demonstrating normal findings and conservative medical treatment to discredit Plaintiff's subjective statements, but never explained how these normal findings and conservative medical treatment relate to Plaintiff's fibromyalgia. (Pl.'s Mem. at 5-6.) In response, Defendant argues that the ALJ properly accounted for Plaintiff's fibromyalgia by considering medical records demonstrating Plaintiff had mostly normal physical examinations, as well as Plaintiff's conservative treatment history. (Def.'s Mem. at 18-20.)

In determining a claimant's residual functional capacity, the ALJ must consider all relevant medical and nonmedical evidence in the record, including medical examination records, medical opinions, and the claimant's own testimony as to her symptoms and pain. §§ 404.1545(a)(3), 416.945(a)(3); *see also Shinaberry v. Saul*, 952 F.3d 113, 119 (4th Cir. 2020). In evaluating the claimant's testimony as to her symptoms and pain specifically, the ALJ conducts a

7

two-prong analysis. *Kenedy v. Saul*, 781 F. App'x 184, 187 (4th Cir. 2019). First, the ALJ looks at the medical records for an impairment that would reasonably produce the claimant's alleged symptoms, evaluating the intensity, persistence, and limiting effects of those symptoms in a work setting. *Id*. Second, the ALJ assesses the credibility of the claimant's statements concerning her symptoms and functional effects. *Id*.

"An ALJ's assessment of a claimant's credibility regarding the intensity and persistence of her symptoms is entitled to great weight when it is supported by the record." *Id*. However, in making a credibility determination, the ALJ "must build an accurate and logical bridge" from the evidence to the conclusion that the claimant's testimony about his or her symptoms was not credible. *Id.* (quoting *Brown v. Comm'r of Soc. Sec. Admin.*, 873 F.3d 251, 269 (4th Cir. 2017)).

The United States Court of Appeals for the Fourth Circuit recently issued *Arakas v. Commissioner, Social Security Administration*, which is instructive in this case. 983 F.3d 83 (4th Cir. 2020). In *Arakas*, the Fourth Circuit considered an ALJ's decision adversely assessing the testimonial statements of pain and symptoms by a claimant with fibromyalgia. *Id.* at 95. Importantly, the Fourth Circuit recognized the unique nature of fibromyalgia when considering a claimant's testimony regarding her pain and symptoms. *Id.* at 95, 97, 101. The Court observed that fibromyalgia is a disease whose "symptoms are entirely subjective[]" and that it will produce physical examinations with normal results despite the presence of pain and other symptoms. *Id.* at 96 (quoting *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996)). The Court noted that fibromyalgia symptoms "wax and wane" producing bad and good days for a claimant. *Id.* at 101 (quoting SSR 12-12p, 2012 WL 3104869, at *6 (July 25, 2012)). Thus, the intensity of symptoms that a claimant will express to doctors will similarly wax and wane from appointment to appointment. *See id.*

Regarding the ALJ's assessment of a claimant's subjective complaints in this context, the *Arakas* Court emphasized that an ALJ "must consider the entire case record and may 'not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate' them." *Id.* at 95 (quoting SSR 16-3p, 2016 WL 1119029, at *5 (March 16, 2016)). Objective evidence is therefore not necessary to prove the existence or intensity of pain or symptoms. *Id*. In fact, where the only objective medical evidence of fibromyalgia is trigger-point findings, the Fourth Circuit held that such findings "should be treated as evidence *substantiating* the claimant's impairment" rather than discrediting the claimant's complaints. *Id.* at 97-98.

Further recognizing the unique nature of fibromyalgia, the Fourth Circuit also held that it was improper for an ALJ to rely on the claimant's "conservative course of treatment" to discredit the claimant's subjective complaints when the claimant's course of treatment is actually typical for fibromyalgia. *Id.* at 102. Treatment for fibromyalgia may include medication and self-care strategies aimed at improving general health. *Id.* Significantly, narcotic painkillers are not recommended to treat fibromyalgia because of their negative side effects and risk of dependence over time. *Id.*

In the instant case, the ALJ considered Plaintiff's fibromyalgia and found that:

[P]hysical examinations show occasional tenderness in the left anterior rib, the metacarpal joints, lateral epicondyles, lateral thighs, trochanteric and anserine bursas and the anterior tibia. Nonetheless, the treatment notes show an improvement in joint pain due to conservative treatment. Additionally, other physical examinations show a normal range of hip and knee motion as well as all other joints, a normal sensation and strength in the bilateral extremities and no joint tenderness.

(R. at 21 (internal citations omitted).) Ultimately, the ALJ concluded that Plaintiff's subjective complaints were not consistent with the evidence in the record because her symptoms improved with treatment, and her physical examinations were unremarkable. (R. at 23.)

Similar to the ALJ in *Arakas*, the ALJ in the instant case failed to properly consider Plaintiff's fibromyalgia because the ALJ relied on objective medical evidence demonstrating normal findings and conservative treatment to discredit Plaintiff's subjective complaints. (R. at 21.) First, as noted in *Arakas*, "[o]bjective indicators such as normal clinical laboratory results simply have no relevance to the severity, persistence, or limiting effects of a claimant's fibromyalgia." *Arakas*, 983 F.3d at 97. Thus, the ALJ's citation of objective medical evidence demonstrating a "normal range of hip and knee motion as well as all other joints" and a "normal sensation and strength in the bilateral extremities and no joint tenderness" are of little significance in evaluating Plaintiff's subjective complaints. (R. at 21.)

More importantly however, like in *Arakas*, Plaintiff's medical records actually demonstrated objective evidence of fibromyalgia—specifically "trigger point findings" and "tenderness in specific sites of the body" which the *Arakas* court found "should be treated as evidence *substantiating* the claimant's impairment." *Arakas*, 983 F.3d at 97-98. Here, the ALJ recognized that Plaintiff's medical records demonstrated that Plaintiff's treatment notes consistently reported tenderness related to fibromyalgia. (*See e.g.* R. at 21, 811, 1030, 1048.) According to the Fourth Circuit, those medical records should be treated as evidence substantiating Plaintiff's statements concerning her pain related to fibromyalgia. Such records demonstrating specific trigger point findings and tenderness is also consistent with the "wax[ing] and wan[ing]" nature of fibromyalgia. *Arakas*, 983 F.3d at 101.

10

Second, like in *Arakas*, Plaintiff's "conservative treatment history" was not inconsistent with typical treatment in fibromyalgia cases. Here, the ALJ cited to medical records which found certain medication to be helpful in alleviating Plaintiff's joint pain. (R. at 21-22.) The ALJ cited Plaintiff's visit with her primary care provider in July 2016, which noted that "initially" Plaintiff found Savella helpful for her pain. (R. at 21, 992.) The ALJ also cited to Plaintiff's visit with her primary care provider in March 2017, where Plaintiff reported that Lyrica helped with her pain. (R. at 21, 1119). As the Fourth Circuit explained in *Arakas*, typical treatment for fibromyalgia includes medication and self-care strategies directed at minimizing symptoms and improving general health. *Arakas,* 983 F.3d at 102. Thus, Plaintiff's treatment appears "wholly consistent with how fibromyalgia is treated generally" and Plaintiff "cannot be faulted 'for failing to pursue non-conservative treatment options where none exist.'" *Id.* at 102 (citing *Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010)).

Additionally, the ALJ's reliance on "conservative medical treatment" was improper because the ALJ impermissibly cherrypicked from the record to support his conclusion that Plaintiff's "conservative treatment" led to an improvement in joint pain. (R. at 21-22.) In *Arakas*, the Fourth Circuit found the ALJ erred by selectively citing from the medical record. *Id.* at 99. For example, the *Arakas* ALJ cited a medical record, noting that the claimant's doctor stated that the claimant had been "responding well" to drug therapy. *Id.* at 98. The actual treatment notes, however, were more nuanced, and included qualifying statements that the claimant "ha[d] responded to combination drug therapies *reasonably well, but ha[d] continued to suffer substantially with breakthrough pain*." *Id.* (alteration in original). The Fourth Circuit held that a decision based on such misstatements or mischaracterizations of fact are not supported by substantial evidence. *Id.* at 99.

11

Here, the ALJ similarly cherrypicked from the cited medical records, while ignoring important nuances that demonstrated Plaintiff still experienced fibromyalgia pain despite her treatment. (R. at 21.) For instance, in July 2016, Plaintiff's treatment notes stated that Plaintiff "initially [] found that the Savella has been helpful," however the treatment notes also reflect that Plaintiff "notic[ed] some increasing soreness in her neck and shoulders," "some tenderness in the upper and lower extremities," "diffuse tenderness," "tenderness with palpation across the MCP joints as well as the lateral epicondyles bilaterally," and "tenderness along the upper trapezius, as well as down the lateral thighs and anterior tibia bilaterally." (R. at 992-93.) Thus, while Plaintiff may have experienced an "improvement in joint pain" based on her treatment, that improvement was not sufficient to alleviate Plaintiff's primary symptoms—tenderness and pain throughout her body. (R. at 992-93.) The ALJ also cited a record dated March 17, 2017, which stated that Plaintiff "has been taking Lyrica and reports it helps when she takes it." (R. at 1119.) However, during that same visit, Plaintiff also reported feeling "moderate pain in her upper and lower back areas," "pain all over," and Plaintiff rated her pain as a six or seven out of ten. (R. at 1119.) Again, though Plaintiff reported that taking medication "improved" her joint pain, she still experienced significant pain.

In sum, the ALJ failed to properly consider the unique nature of fibromyalgia when evaluating Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms. Because fibromyalgia produces minimal objective evidence of pain, and because little can be done to treat fibromyalgia, it was improper for the ALJ to rely on the lack of objective medical evidence and the overall conservative nature of Plaintiff's treatment to discredit Plaintiff's subjective complaints. The ALJ therefore erred in his consideration of Plaintiff's fibromyalgia and resulting pain, and remand is warranted on this ground.

2. The ALJ Did Not Err in His Consideration of Plaintiff's Obesity.

Plaintiff contends that the ALJ also erred by failing to address the effect Plaintiff's obesity had on Plaintiff's complaints of pain. (Pl.'s Mem. at 7.) In response, Defendant argues that the ALJ sufficiently discussed the evidence relating to obesity and encompassed any resulting limitations in the residual functional capacity determination. (Def.'s Mem. at 19.)

Although not an independent impairment in the listings, obesity "warrants consideration in conjunction with any related musculoskeletal, respiratory or cardiovascular conditions." *Hazelwood v. Colvin*, No. 3:13CV416, 2014 WL 1911891, at *10 (E.D. Va. May 13, 2014) (citing SSR 02-1p, 2002 WL 34686281 (Sept. 12, 2002)). During the sequential analysis, the ALJ should "consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity." SSR 02-1p. The ALJ must consider the effects of a claimant's obesity combined with her other impairments; however, the ALJ must "not make assumptions about the severity or functional effects of obesity combined with other impairments." *Id.* If the ALJ "based his determinations on sources that were aware of Plaintiff's obesity, he satisfied this requirement." *Hazelwood*, 2014 WL 1911891, at *10.

Here, the ALJ considered Plaintiff's obesity, and found that obesity does not aggravate Plaintiff's documented physical and mental condition beyond the limitations outlined in Plaintiff's residual functional capacity. (R. at 22.) In support of this conclusion, the ALJ noted that Plaintiff's obesity does not affect her ability to ambulate effectively. (R. at 22.) The ALJ further underscored the lack of evidence that obesity impaired Plaintiff's respiratory and cardiovascular systems, and the lack of evidence that obesity affected Plaintiff's mental conditions. (R. at 22.) Additionally, the ALJ relied, in part, on the state agency physician's opinions, who noted Plaintiff's obesity as

an impairment and ultimately considered Plaintiff's obesity in their residual functional capacity opinions. (R. at 22-23, 109, 125, 144, 161.) While the ALJ could have addressed Plaintiff's obesity in more detail, it is apparent from the ALJ's opinion that the ALJ considered Plaintiff's obesity and the lack of impact such obesity had on Plaintiff's respiratory and cardiovascular systems. Having done so, the ALJ reasonably concluded that any pain caused by Plaintiff's obesity was accounted for in the residual functional capacity determination. (R. at 20, 22-23.) Therefore, the ALJ did not err on this ground.

### B. The Uncertainty Surrounding How the ALJ Considered Evidence Outside the Closed Period of Disability Precludes Meaningful Review of the ALJ's Decision.

Plaintiff contends that the ALJ improperly considered Plaintiff's impairments as of the date of his decision, rather than Plaintiff's impairments during the closed period. (Pl.'s Mem. at 1, 8; Pl.'s Supp. Br. at 2.) Defendant argues that the ALJ did not err by considering evidence outside the closed period of disability because the records from outside the closed period are "probative of and entirely consistent" with records from within the closed period of disability. (Def.'s Supp. Br. at 5.)

The Social Security Administration defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). If a claimant was previously disabled, but has since recovered and returned to work, the claimant may allege a closed period of disability to obtain benefits for the time he or she was disabled. *See Campanaro v. Colvin*, No. 14-12876, 2015 WL 5021672, at *1 (E.D. Mich. June 30, 2015) (citing *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972)); *Taylor v. Astrue*, No. 5:10-CV-00512-D, 2011 WL 6934577,

at *1 (E.D.N.C. Nov. 7, 2011) (reviewing ALJ's sequential evaluation of Plaintiff's impairments during a closed period of September 1, 2007 and December 1, 2008). When a claimant alleges a closed period of disability, "the decision maker determines that a new applicant for disability benefits was disabled for a finite period of time which started and stopped prior to the date of his decision." *Pickett v. Bowen*, 833 F.2d 288, 289 n.1 (11th Cir. 1987).

In closed period cases, the ALJ should consider evidence within the closed period of disability to determine whether Plaintiff was entitled to benefits for that limited duration. *See Adkins v. Berryhill*, No. 3:17-CV-01927, 2017 WL 3781167, at *11 (S.D.W. Va. Aug. 9, 2017). An ALJ may, however, consider evidence outside a closed period of disability if that evidence is "probative" of disability within the closed period. *Hill v. Colvin*, No. 15-1027, 2016 WL 3181762, at *10 (D. Md. June 8, 2016). "'The primary benefit of such evidence' is that it 'speaks to the credibility and accurateness of earlier evaluations and opinions.'" *Hayden v. Martin Marietta Materials, Inc. Flexible Benefits Program*, 763 F.3d 598, 605 (6th Cir. 2014) (quoting *Javery v. Lucent Techs., Inc. Long Term Disability Plan for Mgmt. or LBA Emps.*, 741 F.3d 686, 690 n.1 (6th Cir. 2014)). Thus, such evidence must be viewed "with caution," as it should only be considered to support a finding of disability during the relevant period. *Williams v. Astrue*, No. 3:11CV208, 2012 WL 1267890, at *3 (E.D. Va. Mar. 28, 2012), *report and recommendation adopted*, No. 3:11CV208, 2012 WL 1252620 (E.D. Va. Apr. 13, 2012).

Here, during the hearing before the ALJ, Plaintiff's counsel amended Plaintiff's application to allege a closed period of disability with an alleged onset date of December 9, 2014, and a closing date of September 30, 2016.[2] (R. at 35.) Despite this amendment, the ALJ, at almost every step in

---

[2]      During the hearing, Plaintiff's counsel stated a closed period of disability from December 9, 2014, "through September of 2016." (R. at 35.) The ALJ, after clarifying that the year Plaintiff's

his opinion, referenced evidence outside of the closed period, and in fact, made findings which incorporated dates outside of the closed period. In short, it appears that the ALJ may not have recognized that Plaintiff limited his application to a closed period of disability.

At step one, the ALJ found that the Plaintiff engaged in substantial gainful activity in the fourth quarter of 2016 and throughout the year 2017, even though Plaintiff's alleged period of disability closed in September 2016. (R. at 17-18.)

At steps three and four, the ALJ relied on the fact that Plaintiff had testified that she was *currently* able to drive to support the ALJ's conclusions that Plaintiff only has a mild limitation in understanding, remembering, or applying information; a moderate limitation in concentrating, persisting, or maintaining pace; and that Plaintiff is able to engage in robust activities of daily living. (R. at 19, 21.) Plaintiff's testimony occurred during the February 2018 hearing before the ALJ—almost a year and a half after Plaintiff's alleged closing date. At no point did the Plaintiff testify that she could drive *during* the closed period of disability.

The ALJ also relied on evidence outside the closed period of disability when evaluating Plaintiff's residual functional capacity. As explained above, the ALJ cited to a medical record from March 2017—six months after Plaintiff's closing date—to support his conclusion that Plaintiff's treatment notes show an improvement in joint pain due to conservative treatment for Plaintiff's fibromyalgia. (R. at 21.) The only other evidence the ALJ cites in support of this conclusion is Plaintiff's July 2016 primary care visit which, although occurring during the closed period, notes

---

disability ended was 2016, stated "[s]o it's December 9, 2014 to September 16, 2016." (R. at 35.) Based on Plaintiff's counsel's statements, it appears that Plaintiff's counsel intended to allege a closing date of September 30, 2016. (R. at 35.)

that Plaintiff "initially" found Savella helpful, but that Plaintiff still noticed increasing soreness in her neck and shoulders. (R. at 1029-30.)

Finally, the ALJ's opinion concluded that Plaintiff has not been under a disability "through the date of this decision[.]" (R. at 25.) Because the ALJ relies on evidence outside the closed period of disability at nearly every step of the ALJ's analysis,[3] the Court finds it likely that the ALJ improperly considered Plaintiff's impairments through the date of his decision, rather than limiting his inquiry to the closed period alleged by Plaintiff.

The Court recognizes that some of the evidence cited by the ALJ outside the closed period of disability could be probative of Plaintiff's disability during the closed period. However, absent some additional explanation, it is simply unclear what evidence the ALJ may have found probative, and how the ALJ evaluated that evidence outside the closed period of disability relative to Plaintiff's allegation of disability within the closed period. *See Woods v. Berryhill*, 888 F.3d 686, 693-94 (4th Cir. 2018) ("[M]eaningful review cannot rest on [] guesswork."). Stated differently, even if it was appropriate for the ALJ to consider evidence outside the closed period in this case, the Court is still left to guess how the evidence cited outside the closed period was probative of Plaintiff's disability during the closed period.

Moreover, while the Court recognizes that some courts have held that when an ALJ makes a general finding of "not disabled," "[i]mplicit in this finding is the fact that claimant was not entitled to a closed period of disability at any relevant time," the case at hand is factually distinct.

---

[3]     Other examples of the ALJ's references to evidence after the closed period of disability include: (1) two references to exhibit 37F/7 (R. at 19, 22), which is a record dated August 8, 2017 (R. at 1259); (2) the ALJ's statement that Plaintiff *is* unable to sit for more than 30 minutes or lift a gallon of water (R. at 21), despite Plaintiff's testimony stating that these symptoms occurred during the closed period (R. at 49, 52).

*See, e.g.*, *Vanduzer v. Colvin*, No. 2:14-CV-17230, 2015 WL 4715974, at *27 (S.D.W. Va. Aug. 7, 2015) (citing *Atwood v. Astrue*, No. 5:11CV002, 2011 WL 7938408, at *6 (W.D.N.C. Sept. 28, 2011)); *see also Puckett v. Barnhart*, 61 F. App'x 21, 24 n.3 (4th Cir. 2003) (rejecting claimant's argument that he was entitled to a closed period of disability because "[t]he ALJ found that at no time was claimant 'disabled' under the Social Security Act[.]"); *Laws v. Astrue*, No. 3:08CV722, 2009 WL 3270770, at *7 (E.D. Va. Oct. 8, 2009) (holding ALJ implicitly found that plaintiff was not entitled to closed period of disability because ALJ found plaintiff was not disabled through the date of the decision). In those cases, the plaintiffs did not specifically allege a closed period of disability before the ALJ. Rather, the plaintiffs only raised on appeal that the ALJ *should* have considered whether the claimant was entitled to a closed period of disability. *See, e.g.*, *Vanduzer*, 2015 WL 4715974, at *4 ("Claimant contends that while the evidence supports a fully favorable decision, at the very least, the ALJ should have awarded Claimant benefits for the closed period beginning on July 10, 2006 and terminating in April, 2013, when Claimant had back surgery."). In contrast, here, Plaintiff recognized she was well enough to return to work and amended her application before the ALJ to allege a closed period of disability. Thus, without the benefit of the ALJ's explanation why evidence outside the closed period was probative to Plaintiff's disability within the closed period, the Court is "unable to review the reasonableness of [the ALJ's] conclusions." *Testamark v. Berryhill*, 736 F. App'x 395, 398 (4th Cir. 2018). Accordingly, on remand, the ALJ should limit his inquiry to the disability period alleged by Plaintiff, or alternatively, explain how evidence outside the closed period is probative as to Plaintiff's allegedly disabling condition within the closed period.

## V.  CONCLUSION

For the reasons set forth above, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 12) be GRANTED, that Defendant's Motion for Summary Judgment (ECF No. 13) be DENIED, and that the final decision of the Commissioner be VACATED and REMANDED pursuant to the fourth sentence of 42 U.S.C. §405(g).

Let the Clerk file a copy of this Report and Recommendation electronically, notify all counsel of record and forward a copy to Senior United States District Judge Robert E. Payne.

**NOTICE TO PARTIES**

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

_____ /s/
Elizabeth W. Hanes
United States Magistrate Judge

Richmond, Virginia
Date: February 3, 2021